**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 18-7-DLB-CJS**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**V.**                  **MEMORANDUM OPINION AND ORDER**

**PEDRO PEREZ-LOPEZ**                                     **DEFENDANT**

\*\*  \*\*  \*\*  \*\*  \*\*  \*\*  \*\*  \*\*

This matter is before the Court on Defendant Pedro Perez-Lopez a/k/a Juan Aguilar's Motion to Dismiss the Indictment charging him with illegal re-entry into the United States. (Doc. # 20). Defendant argues that his previous removal order—which serves as a predicate for this criminal action—was fundamentally unfair, and so this action must be dismissed. For the reasons below, Defendant's Motion will be **denied.**

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In early August 2012, Defendant entered the United States on foot. (Doc. # 20-2 at 5). After more than a week of walking, Defendant was picked up by United States immigration officers in Arizona. *Id.*; *see also* Doc. # 20-4. Defendant identified himself to the United States agents as Pedro Perez-Lopez, from Mexico, when in fact his name is Juan Aguilar and he is from Guatemala. *Id.* Defendant alleges he fabricated these facts with the intent to avoid being returned to Guatemala. *Id.*

According to Defendant, he was questioned by immigration officers, and forced by an immigration officer to sign documents, so that he "could be released in a few hours or the next day." *Id.* Defendant alleges that the officer did not read him the documents in

1

Spanish, and that he does not read English. *Id.* Defendant further alleges that the officer did not tell him he was applying for admission to the United States, that he could withdraw his application for admission, or that he was being charged with any wrongdoing. *Id.* at 6. Instead, Defendant claims that he expected to simply be sent back to Mexico. *Id.* at 6-7. Nevertheless, Defendant was determined to be inadmissible and was subjected to expedited removal. (Doc. # 20-7). Defendant was returned to Mexico a few days after he was detained. (Doc. # 20-1 at 7).

On December 6, 2017, a deportation officer associated with the Immigration and Customs Enforcement, Enforcement and Removal Operations (ERO) went to a residence in Covington, Kentucky, to locate a previously removed alien associated with the address. (Doc. # 1-3 at 2). Believing that they had located the previously removed alien, the ERO agents conducted a vehicular stop on a man who had exited the residence. *Id.* However, the man arrested was in fact the Defendant, who handed the officers a Guatemalan identification card with the name Juan Aguilar-Aguilar, and admitted in Spanish that he was not in the United States lawfully. *Id.*

Defendant was taken into custody, fingerprinted, and processed at the Boone County Jail. *Id.* His fingerprints were run on the ENFORCE/IDENT system, and it was discovered that he had been previously stopped by Border Patrol Agents near Sasabe, Arizona. *Id.* at 2-3. At the time, he had given the agents the name Pedro Perez-Lopez, and had been served with an Expedited Order of Removal. *Id.* at 3. The ERO officers also ran Defendant's names through national databases to determine if he had filed or submitted any application for lawful entry into the United States. *Id.* No such applications were found. *Id.*

On December 21, 2017, a federal criminal complaint was filed against Defendant, alleging that he had been previously removed under an Expedited Order of Removal, and had not lawfully re-entered the Unites States. (Docs. # 1, 1-2, 1-3). Defendant was subsequently indicted. (Doc. # 10). Defendant pled not guilty, and a trial date was set for March 19, 2018. (Doc. # 16).

On February 16, 2018, Defendant filed a Motion to Dismiss the Indictment, arguing that the predicate to the current criminal charge—the previous removal action—was fundamentally unfair. (Doc. # 20). Defendant further requested an evidentiary hearing. *Id.* After the United States responded (Doc. # 22), and Defendant replied (Doc. # 23), the Court issued an Order requiring each party to file a supplemental memorandum addressing the applicability of *United States v. Estrada*, 876 F.3d 885 (6th Cir. 2017). (Doc. # 24). The parties having filed their supplemental memoranda (Docs. # 25 and 26), and the Court finding that an evidentiary hearing is unnecessary, this matter is ripe for the Court's review.

## II. ANALYSIS

### A. A defendant to a criminal charge under 8 U.S.C. § 1326 can collaterally challenge the administrative order predicate to the charge.

In *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987), the Supreme Court "established that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." Where the violation of an alien's due-process rights[1] in the deportation proceeding "amount[s] to a complete

---

[1] "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. Immigration & Naturalization Serv.*, 237 F.3d 696, 699 (6th Cir. 2001).

3

deprivation of judicial review of the determination … [t]he Government may not … rely on those orders as reliable proof of an element of a criminal offense." *Id.* at 840. Thus, a defendant charged under 8 U.S.C. § 1326 has the right to collaterally attack his removal order "before the administrative order may be used to establish conclusively an element of a criminal offense." *United States v. Galaviz-Galaviz*, 91 F.3d 145, at *2 (6th Cir. 1996) (table) (citing *Mendoza-Lopez*, 481 U.S. at 838).

To successfully challenge the validity of his previous deportation or removal order under 8 U.S.C. § 1326, Defendant must demonstrate that (1) "[he] exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(1)-(3). To demonstrate "fundamental unfairness," Defendant must "show both a due process violation and that he was prejudiced by the removal proceeding. *United States v. Rodriguez-Flores*, No. 5:13-cr-75-KKC, 2014 WL 1744860, at *4 (E.D. Ky. May 1, 2014). "Because the requirements are conjunctive, [Defendant] must satisfy all prongs." *United States v. Estrada*, 876 F.3d 885, 887 (2017), *petition for cert. filed* (U.S. Mar. 5, 2018) (No. 17-1233).

**B.     Administrative Exhaustion and Judicial Review**

Defendant and the United States agree that the statute that governs expedited-removal proceedings did not provide Defendant any opportunity for administrative or judicial review. (Docs. # 20-1 at 4-5, 22 at 5-6); *see also* 8 U.S.C. § 1225(b)(1)(C) ("Except as provided [for where an alien has shown credible fear of returning], a removal order … is not subject to administrative appeal"); 8 U.S.C. § 1225(b)(1)(A)(i) ("If an

4

immigration officer determines that an alien … who is arriving in the United States … is inadmissible…, the officer shall order the alien removed from the United States without further hearing or review."). The Court therefore concludes that Defendant exhausted all available administrative remedies and was deprived of the opportunity for judicial review.

C. **Fundamental Unfairness**

"To prove the fundamental unfairness of an underlying deportation order, a defendant must show both a due process violation emanating from defects in the underlying deportation proceeding and resulting prejudice." *Estrada*, 876 F.3d at 887. Due process requires that "certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures," that give the possessor of that right, at a minimum, notice and an opportunity to be heard." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-42 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). With regard to immigration, deportation, and removal of aliens, federal regulations create procedures "designed to protect the interests of the alien and to afford him due process of law. *Bridges v. Wixon*, 326 U.S. 135, 152 (1945); *see also United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155 (1923) ("It may be assumed that one under investigation with a view to deportation is legally entitled to insist upon the observance or rules promulgated by the Secretary pursuant to law.").

For example, when an alien seeking admission to the United States arrives without entry documents, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of prosecution." 8 U.S.C. § 1225(b)(1)(A)(i). The procedure for a

5

determination of inadmissibility leading to expedited removal is codified at 8 C.F.R. § 235.3(b)(2). As part of this procedure, the immigration office "shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.* at § 235.3(b)(2)(i). Then, after the immigration officer obtains "supervisory concurrence in accordance with paragraph (b)(7) [of this Code section], the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt." *Id.*

In addition, the regulations allow for an inadmissible alien to be permitted to withdraw his application for admission to the United States at the discretion of the Attorney General. 8 C.F.R. § 235.4. However, "nothing in this section should be construed as to give an alien the right to withdraw his or her application for admission." *Id.* Thus, the decision to grant an alien's request to withdraw his application is entirely discretionary.

In this case, Defendant argues that the Border Patrol agent violated his due-process rights by failing to advise him of the charges against him and failing to read him the sworn statement prepared by the agent. (Doc. # 20-1 at 3-4). According to Defendant, his right to notice and the opportunity to be heard was violated. *Id.* at 10-12. This, Defendant alleges, prejudiced him because "he was not informed of the opportunity to withdraw his implied application for admission." *Id.* at 8.

The Sixth Circuit has recently opined on legal issues similar to those raised here. In *Estrada*, the Sixth Circuit reviewed a defendant's collateral attack on the deportation order that was the predicate for his conviction under § 1326. *Estrada*, 876 F.3d 885. The defendant had filed motions to dismiss the criminal re-entry case against him, arguing

that the immigration judge had "violated his due process rights by failing to advise him of the possibility of discretionary relief from removal." *Id*. at 886. When these motions were denied, the defendant collaterally attacked the predicate deportation order by alleging his counsel was ineffective for failing to inform him of the possibility of discretionary relief from deportation. *Id*. On de novo review, the Sixth Circuit, recognizing the key issue was the defendant's collateral attack on the predicate deportation order, emphasized that although the defendant's "appeal concentrates on his attorney's alleged shortcomings, rather than the Immigration Judge's, [it] matters not … [w]ithout a cognizable liberty or property interest at stake, a due process violation cannot occur." *Id.* at 888 (citing *Hanna v. Gonzales*, 128 F. App'x 478, 481 (6th Cir. 2005)).

The analysis in *Estrada* is instructive and controlling. *Estrada* confirmed that no individual has a "constitutionally protected liberty interest in obtaining discretionary relief from deportation." *Estrada*, 87 F.3d at 887 (quoting *Ashki v. Immigration & Naturalization Serv.*, 233 F.3d 913, 921 (6th Cir. 2000)). The Sixth Circuit also held that an alien does not have a "constitutional right to be informed of eligibility for, or to be considered for, discretionary relief." *Id.* at 888 (declining to follow the Second and Ninth Circuit holdings to the contrary). In sum, no due-process violation can occur where the United States declines to: (1) inform an alien of availability of discretionary relief; (2) consider the alien for discretionary relief; or (3) grant the alien discretionary relief.

Thus, under *Estrada*, Defendant's Motion fails. Crucially, the alleged prejudice must result from the due-process violation. *Estrada*, 876 F. 3d at 887 ("To prove the fundamental unfairness … a defendant must show both a due process violation … and *resulting* prejudice.") (emphasis added). Defendant's claim of prejudice is that he would

7

have withdrawn his application—subject to the Attorney General's discretion—if he had known what the charges against him were. (Doc. # 20-1 at 13-14). But without any right to be told of the opportunity to withdraw—or an actual right to withdraw his application—the allegations of prejudice are untenable, as they are premised entirely on discretionary relief, to which he has no due-process rights. Without a due-process violation, the Court "perceive[s] no fundamental unfairness in the entry of [Defendant's] underlying [removal] order." See Estrada, 876 F.3d at 889.

Defendant argues that Estrada is "factually different" from the case at bar, and that the Court should look for guidance instead to United States v. Raya-Vaca, 771 F.3d 1195 (9th Cir. 2014). But unlike Estrada, the Raya-Vaca Court adopted a very different analytical framework from that used by the Sixth Circuit in Estrada. In Raya-Vaca, the defendant alleged "three distinct" due-process violations: (1) the immigration officer failed to inform him of the charge against him and failed to read his sworn statement back to him; (2) the immigration officer failed to advise him that he could possibly apply to withdraw his application for admission; and (3) the immigration officer did not permit him to consult with counsel. Raya-Vaca, 771 F.3d at 1202. Instead of considering these distinct challenges separately, the Ninth Circuit first found that the defendant's due-process rights were violated when he was not informed of the charges against him and given the opportunity to review the charges, and then found that it was plausible that he would have been granted permission to withdraw his application. Id. at 1203-11. In effect, the Ninth Circuit considered one of Raya-Vaca's due-process challenges under the due-process prong of the "fundamentally unfair" analysis, and then used another of Raya-Vaca's due-process challenges under the prejudice prong of the analysis. Factually and

8

analytically, *Raya-Vaca* is too distinguishable from *Estrada* to be given substantial consideration in the analysis of this case.[2]

Defendant has failed to show that he has been "deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause," and was thereby prejudiced. *Estrada*, 876 F. 3d at 887. He therefore has not met his burden of showing that the predicate deportation order to his current criminal charge of illegal reentry was fundamentally unfair. Accordingly, Defendant's Motion to Dismiss the Indictment (Doc. # 20) will be **denied**.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1. Defendant Pedro Perez-Lopez a/k/a Juan Aguilar's Motion to Dismiss the Indictment (Doc. # 20) be, and is hereby **DENIED**; and

2. The time period between the filing of the Motion to Dismiss and the date of this Order, totaling **seventy (70) days**, is **excluded** from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. 3161(h)(1)(D).

This 27th day of April, 2018.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2018\18-7 Perez Lopez MTD MOO.docx

---

[2] Moreover, the Sixth Circuit has expressly declined to follow the Ninth Circuit's approach on whether an alien has a constitutional right to be informed of eligibility for, or considered for, discretionary relief. *Estrada*, 876 F. 3d at 888 (rejecting Ninth Circuit's approach in *United States v. Lopez-Velasquez*, 629 F. 3d 894, 897 (9th Cir. 2010)).